JOSEPH SUBILOSKY *vs.* COMMONWEALTH.

Suffolk.   October 5, 1970. — December 15, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Error,* Whether error harmful.  *Practice, Criminal,* Assistance of counsel.  *Constitutional Law,* Assistance of counsel.  *Evidence,* Impeachment of credibility, Prior conviction.

Respecting indictments for serious offences, where the evidence introduced during eight days of trial in 1966 warranted conviction of the defendant notwithstanding his alibi testimony, and the defendant by his own testimony on direct examination opened up the subject of his long prison career and he was cross-examined on that subject only by the introduction, in compliance with G. L. c. 233, § 21, as amended, of six records of prior convictions for serious offences, one conviction in 1937 and three convictions in 1940 concerning which he had had no counsel and had not waived his right to counsel, and two convictions in 1958 concerning which he was represented by counsel, it was held that in the circumstances the admission in evidence of the 1937 and 1940 records of conviction solely to impeach the defendant's credibility, even if error under the 1967 decision in *Burgett* v. *Texas,* 389 U. S. 109, was harmless beyond a reasonable doubt.

PETITION for a writ of error filed in the Supreme Judicial Court for the county of Suffolk on July 31, 1969.

The case was reserved and reported by *Reardon,* J., without decision.

*Richard W. Renenha* for the petitioner.

*Lawrence P. Cohen,* Assistant Attorney General (*Manuel Morse,* Assistant District Attorney, with him), for the Commonwealth.

CUTTER, J.   This petition for a writ of error relates to the 1966 convictions considered by this court in *Commonwealth* v. *Subilosky,* 352 Mass. 153.   In that case, on March 3, 1967, this court affirmed Subilosky's 1966 convictions for the first degree murder of Pasquale J. Lombardi (acting manager of a Worcester bank), armed robbery, and related offences.

On November 13, 1967, the Supreme Court decided *Burgett* v. *Texas,* 389 U. S. 109, 115.   That case determined that it was no longer proper to "permit a [prior] conviction obtained in violation of *Gideon* v. *Wainwright* [372 U. S. 335] to be used against" a criminal defendant, "either to support guilt or enhance punishment for another offense."

As a consequence of the *Burgett* decision, Subilosky sought a writ of habeas corpus in the United States District Court alleging, among other matters, denial of his constitutional rights in the use of six prior convictions to impeach his credibility at his 1966 Superior Court trial.   In the proceedings which led to four of these convictions, one in 1937 and three in 1940, Subilosky was not represented by counsel. The district judge denied the writ.   *Subilosky* v. *Scafati,* 294 F. Supp. 18, 20 (D. Mass.).   The decision of the district judge was affirmed because of Subilosky's failure to exhaust his State remedies.   *Subilosky* v. *Massachusetts,* 412 F. 2d 691, 693 (1st Cir.).

Upon the present petition, the single justice made the following findings concerning the prior convictions, records of which were introduced in evidence at the 1966 trial. (1) Subilosky had no counsel and did not waive his right to counsel in the following instances:   1937 — Norfolk County conviction for prison escape, and 1940 — three Middlesex County convictions for (a) robbery while armed with intent to kill or maim;   (b) assault with intent to murder being armed;   and (c) assault with intent to rob.   (2) He

was represented by counsel at the time of two 1958 Suffolk County convictions for 1951 offences, robbery while armed and unlawfully carrying a pistol on his person.[1]

The single justice reserved the case, without decision, for the determination of the full court, on the petition, the amended answer, the Superior Court return, one assignment of error, the findings, certain exhibits, and "the trial transcript." We interpret this as referring to the transcript of the original 1966 trial under G. L. c. 278, §§ 33A–33G. That transcript is a part of the record in the appeal decided, 352 Mass. 153, of which in any event we could take judicial notice. See *Commonwealth* v. *DiStasio*, 298 Mass. 562, 567; *Culhane* v. *Foley*, 305 Mass. 542, 543; *Matter of Welansky*, 319 Mass. 205, 208–210; *Miller* v. *Norton*, 353 Mass. 395, 399–400.

1. In *Gilday* v. *Commonwealth*, 355 Mass. 799, we were "not in agreement as to the implications of the *Burgett* case" with respect to issues much the same as those now before us. We then, however, assumed (without deciding) that the *Burgett* decision precludes, at least for trials occurring subsequent to that decision, impeachment of the credibility of a witness by records of his convictions at times when he had no counsel and had not waived counsel.[2] We

---

[1] Pertinent proceedings involving or affecting Subilosky are set out below in chronological order. *1937* — Norfolk conviction (no counsel) for escape — sentence two and one-half to three years. *1940* — three Middlesex convictions (those mentioned in the text of this opinion) — concurrent sentences of fifteen to twenty years. Subilosky had no counsel. *1952* — Middlesex County convictions (not mentioned in the body of this opinion) for assault with intent to rob and three charges of armed robbery. These were reversed (July 2, 1965) by this court in *Subilosky* v. *Commonwealth*, 349 Mass. 484, because Subilosky had no counsel. These convictions were not offered against him at his 1966 trial. *1958* — conviction (Subilosky had counsel) for a 1951 offence — five to seven years to run concurrently with sentences then being served. *1965, August 27* — the offences now under review, including first degree murder, took place. *1966, April* — Subilosky (represented by counsel) was sentenced to life imprisonment. *1967, March 3* — judgments affirmed (352 Mass. 153). *1967, November 13* — the *Burgett* case was decided (389 U. S. 109). *1968, December 30* — decision of United States District Court on habeas petition. *1969, June 30* — the United States Court of Appeals (1st Cir.) affirmed the District Court's decision. *1969, July 31* — present petition for writ of error filed.

[2] See concerning application of the *Burgett* case to the use for impeachment purposes of conviction records in cases where a criminal defendant had no counsel, *Tucker* v. *United States*, 299 F. Supp. 1376, 1377 (N. D. Cal.); and

continue to make this assumption, in the absence of any later clarification of the *Burgett* case by the Supreme Court of the United States. In the *Gilday* case, we did not decide whether the *Burgett* decision applied retroactively to trials before that decision in which records of convictions (where the defendant had no counsel) had been introduced solely for impeachment purposes. In that case we were of opinion that, in any event, use of the records was "harmless beyond a reasonable doubt." *Chapman* v. *California*, 386 U. S. 18, 24. The United States Court of Appeals for the First Circuit agreed with this opinion. *Gilday* v. *Scafati*, 428 F. 2d 1027 (1st Cir.), cert. den. 400 U. S. 926. Although in part II of this last cited *Gilday* case (at p. 1030) it was assumed that the *Burgett* decision applies retroactively to *all* trials before it was announced,[3] we again need not reach the issue of retroactivity.

Massachusetts has had a long practice (see Rev. St. c. 94, § 56; St. 1866, c. 260, Wigmore [3d ed.] § 579), under a general statutory rule of evidence, of admitting prior convictions (subject to proper limiting instructions) to impeach the credibility of any witness. See G. L. c. 233, § 21 (as amended by St. 1950, c. 426); *Commonwealth* v. *Ladetto*, 353 Mass. 746. See also *Commonwealth* v. *Walsh*, 196 Mass. 369, 370; *Rittenberg* v. *Smith*, 214 Mass. 343, 345–347 (civil

---

*Johnson* v. *State*, 9 Md. App. 436, 438 (Md. Ct. Spec. App.). See also, for a case decided before the *Burgett* case, *People* v. *Coffey*, 55 Cal. Rptr. 535, 540 (Ct. App.); *S. C.* on appeal 67 Cal. 2d 204, 218–224.

[3] The decisions which have applied the *Burgett* case retroactively have dealt principally with using prior convictions to prove a criminal defendant guilty of a sufficient number of earlier offences to make applicable to him *recidivist* or *habitual offender* statutes. Such proof would enhance his punishment. See e.g. *Williams* v. *Coiner*, 392 F. 2d 210, 212 (4th Cir.); *Oswald* v. *Crouse*, 420 F. 2d 373, 374–375 (10th Cir.); *Tucker* v. *Craven*, 421 F. 2d 139, 140 (9th Cir.); but see *Tucker* v. *United States*, 299 F. Supp. 1376 (N. D. Cal.). See also *Losieau* v. *Sigler*, 406 F. 2d 795, 798–799 (8th Cir.). It may be premature (until the Supreme Court of the United States has ruled on the issue directly) to rely on these cases as requiring retroactive application of the *Burgett* case in the different situation where prior convictions are used only to *impeach credibility*. The per curiam decision of *Bates* v. *Nelson*, 393 U. S. 16, also involved another issue and does not dispose of the matter. To use a prior conviction solely to impeach the credibility of a witness (even a criminal defendant) much less directly affects proof or enhancement of guilt than to use it to prove his recidivism.

cases); *Commonwealth* v. *Smith*, 342 Mass. 180, 186.[4] We consider whether introduction, in the 1966 trial, of Subilosky's 1937 and 1940 convictions (where he had no counsel), solely to impeach his credibility, was harmless error beyond a reasonable doubt.

2. We do not attempt a complete new summary of the direct evidence at the 1966 trial concerning the robbery and Subilosky's participation in it. A thorough summary was made by Mr. Justice Whittemore in the earlier opinion. See 352 Mass. 153, 155–157.[5] There (p. 157) it was said that Subilosky's "testimony if believed, would have established his alibi." We, of course, consider the case on the premise that it was important to him that his alibi testimony be believed.

Subilosky, among other matters, gave the following testimony. In 1966, he was forty-five years old. · In his early years he was "in a great deal of difficulty with the police" and "as a result" spent "a substantial amount of time in State prison." Elsewhere, he testified, "I've lived in prison all my life. I was born out of a wall of a prison." He was released from prison on July 8, 1965, apparently as

---

[4] For the authorities dealing with c. 233, § 21, and related problems, see Leach and Liacos, Handbook of Massachusetts Evidence (4th ed.) 122–126; cf. pp. 302–304. General discussions of this type of impeachment include Wigmore, Evidence (3d ed.) §§ 579, 977, 980–987 (cf. § 194); McCormick, Evidence, §§ 42–43; Anderson, Wharton's Criminal Evidence (12th ed.) § 946. See also *Spencer* v. *Texas*, 385 U. S. 554, 560–563. Cf. Williams, Proof of Guilt (3d ed.) 213–243; note 42 B. U. L. Rev. 91. Because of the broad use of the statutory method of impeachment prior to the *Burgett* decision on November 13, 1967, such reasons as may support applying that case retroactively (see fn. 3) in impeachment cases are likely to be outweighed (see *Stovall* v. *Denno*, 388 U. S. 293, 298–299; *Desist* v. *United States*, 394 U. S. 244, 253) by the serious disadvantages of reopening numerous prior State criminal cases. Cf. *United States* v. *Lucia*, 416 F. 2d 920, 925–926 (5th Cir.).

[5] Subilosky's brief points out that witnesses were not in agreement whether the 1965 bank robbery was the work of four or of three men. (See 352 Mass. 153, 155–156, fn. 1.) The Commonwealth refers us especially to (1) the direct testimony by tellers at the Worcester County Institution for Savings about the robbery, including the explicit in-court identification of Subilosky by one witness, and her statement that she saw Subilosky shoot Lombardi; (2) testimony that Subilosky, while talking with Mrs. Miriam Hebert during the early morning hours following the robbery, admitted his own participation in the robbery, although claiming that someone called "Red" shot Lombardi; and (3) evidence that a pistol owned by Subilosky was used in the robbery. See 352 Mass. 153, 156–157.

a result of the reversal of his 1952 Middlesex convictions for armed robbery in 349 Mass. 484 (fn. 1, *supra*). He soon bought a .357 Magnum pistol [6] from a truck driver (whose name he did not know) in a tavern in Brighton. He "[u]sed it just for target practice." His testimony was that, about four days before the robbery, he gave it to Gregory J. Saunders (originally a codefendant in the 1966 prosecution, who during trial pleaded guilty to second degree murder and other offences connected with the 1965 robbery).

Subilosky testified concerning his presence in and near Worcester on August 27, 1965, the day of the robbery, when he was released from his job unexpectedly about 12:30 P.M. He admitted seeing Saunders in a bar that afternoon. He claimed that he had been drinking "a lot" that afternoon and evening at various bars until he went to the house of a Mr. and Mrs. Hebert, about 11 P.M. There, he said, he spent the night on the sofa. During his stay, Mrs. Hebert read aloud a news account of the robbery and "came to Saunders' name" (cf. Mrs. Hebert's account, 352 Mass. 153, 156, fn. 2). According to Subilosky, he said to her, "I gave that kid a gun . . . . I might be in trouble." He was taken to his niece's house in Northboro. The niece drove him to Boston and he "took a freight out" and went to Kansas City, Missouri, where he arrived about two weeks later. He was picked up there by the FBI in September.

During the cross-examination of Subilosky, the records of the 1937, 1940, and 1958 convictions were introduced in evidence. The judge instructed the jury at once that they were "offered for a very limited purpose," and only to affect Subilosky's credibility.[7] After his charge, at the re-

---

[6] The evidence showed that this pistol was found in an automobile abandoned (at least by codefendants) after the robbery. Counsel for Subilosky stipulated that it belonged to Subilosky.

[7] Subilosky's then attorney (Mr. Joseph J. Balliro) objected to the introduction of the records on various grounds, including that Subilosky had "already admitted that he ha[d] spent most of his life . . . in jail," so that the records were not likely "to assist this jury in determining how credible his testimony" was. The same ground was argued briefly to this court in the 1967 appeal. Of course, Subilosky's counsel could not have anticipated the then undecided *Burgett* ruling and saved an exception on that ground. This court (352 Mass. 153, 167), six months before the *Burgett* case, decided only

quest of Subilosky's attorney, the trial judge gave a similar instruction.

3. Subilosky, by his own testimony on direct examination, opened up the subject of his long prison career. See *Commonwealth* v. *Redmond*, 357 Mass. 333, 339–340; *Shorter* v. *United States*, 412 F. 2d 428 (9th Cir.), where a defendant, who had introduced prior convictions himself, was not permitted to argue prejudice. See also *Padron* v. *United States*, 254 F. 2d 574, 577 (5th Cir.); *Frimet* v. *United States*, 293 F. Supp. 1127 (S. D. N. Y.). Subilosky was cross-examined on the subject only by the introduction of his prior conviction records in compliance with c. 233, § 21 (fn. 4), to attack his credibility.

The actual records made specific what Subilosky had said in general terms. Except in detail, they added little if anything to what the jury already properly knew, viz. that a man, then forty-five years old, had "lived in prison all . . . [his] life." The jury hardly could have thought that such a long prison career was for trivial offences. They knew of his 1958 conviction (represented by counsel) for the violent crime of armed robbery. See *Howard* v. *Craven*, 306 F. Supp. 730, 735 (C. D. Cal.). They knew also from him that, promptly after his release from prison on July 8, 1965, he had bought a pistol in a bar for "target practice." The case is distinguishable from those where significant evidence bearing directly on guilt (although somewhat duplicated by other evidence) was improperly admitted. See *United States* v. *Dickens*, 417 F. 2d 958, 962 (8th Cir.); *People* v. *Smith*, 38 Ill. 2d 13, 17. See also *Government of Virgin Islands* v. *Bell*, 392 F. 2d 207, 208–210 (3d Cir. — judge's charge not proper). As our earlier opinion (352 Mass. 153) indicates, the evidence (see fn. 5 of this opinion) fully warranted Subilosky's conviction, especially the direct testimony of persons at the robbery, Subilosky's admissions to

that Subilosky's own "reference to his prior criminal convictions does not make the admission . . . of the records themselves [pursuant to G. L. c. 233, § 21] unnecessary, cumulative, or error." This meant no more than that the prosecution, under the statute, was entitled to introduce the records themselves despite Subilosky's general testimony about his life in prison.

Mrs. Hebert, the ownership of a gun involved in the robbery, his flight to Kansas City, and his admitted presence in Worcester at the time of the robbery.

We conclude, assuming it to have been error to have admitted the 1937 and 1940 records, that the error was harmless beyond a reasonable doubt. *Chapman* v. *California*, 386 U. S. 18, 24. See *Harrington* v. *California*, 395 U. S. 250. Any error arising from the use of the 1937 and 1940 records to affect Subilosky's credibility seems negligible in the light of his own testimony about his time spent in prison, the admissible record of his 1958 conviction for armed robbery in 1951, and the evidence introduced against him during eight days of trial.[8] *Howard* v. *Craven*, 306 F. Supp. 730, 735 (C. D. Cal.).

*Judgments affirmed.*

---

[8] Excluding days spent selecting a jury.