COMMONWEALTH *vs.* JASPER DEERAN.

Suffolk.   May 8, 1973. — October 26, 1973.

Present:   TAURO, C.J., REARDON, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Search and Seizure. Homicide. Practice, Criminal,* Capital case, Assistance of counsel. *Constitutional Law,* Assistance of counsel. *Evidence,* Impeachment of credibility, Prior conviction.

Denial of a motion in a murder case to suppress incriminating evidence discovered by the police in a warrantless search of the home of defendant's estranged wife was not a denial of rights guaranteed by art. 14 of the Declaration of Rights of the Massachusetts Constitution or the Fourth and Fourteenth Amendments to the Federal Constitution, where the estranged wife freely consented to the search. [195-196]

This court in a capital case did not, under G. L. c. 278, § 33E, reduce a verdict of guilty of second degree murder to one of manslaughter, despite evidence that the killing was "in the heat of passion" or in self-defence while the defendant was under the influence of alcohol or drugs, where there was also evidence sufficient to prove second degree murder and there were careful and well-rounded instructions about the jury's options. [196-197]

At the trial of a capital case, prior convictions of the defendant in a District Court on pleas of guilty were admissible to impeach his credibility despite absence of counsel in the District Court and a possible failure of the judge there to file a certificate of waiver of counsel in compliance with Supreme Judicial Court Rule 3:10, where the judge in the District Court had noted on the complaints that the defendant did not want counsel and the defendant admitted on voir dire that in the District Court he had pleaded guilty and waived counsel in expectation of leniency. [197-198]

INDICTMENTS found and returned in the Superior Court on December 16, 1970.

A pre-trial motion to suppress was heard by *Leen,* J. The cases were tried before *Roy,* J.

*Robert V. Greco* for the defendant.

*James M. McDonough,* Legal Assistant to the District Attorney, for the Commonwealth.

REARDON, J. The defendant was tried on indictments charging murder in the first degree of one Joseph Langone, and unlawfully carrying a firearm. Upon a first trial the jury were unable to agree and a mistrial resulted. At the second trial the defendant was found guilty of murder in the second degree and also of the firearm violation. The trial was subject to G. L. c. 278, §§ 33A-33H. The case is here on the defendant's appeals and three assignments of error.

There was evidence that on the evening of September 30, 1970, the defendant went to Santarpio's restaurant and bar in East Boston, that he appeared "normal" at the time, that he engaged in a private conversation with the victim for ten or fifteen minutes, and that they both thereafter separately left the building by the same exit. Within a brief time Langone was seen through a window by witnesses inside the building walking on the sidewalk adjoining the building, with the defendant behind him. A shot was heard. Langone dropped and the defendant was seen to fire additional shots at him while he was on the ground. Examination of the body of the victim disclosed gunshot wounds, one of which was in the head, the other three being in the back.

The defendant took the stand and testified that he had gone to his wife's house on September 29 and spent the night and the next day there. Most of the time was spent arguing, inferably in part about the fact that Mrs. Deeran was going out with Langone, whom the defendant identified as a "loan shark" from whom he had borrowed money. Mrs. Deeran left the house, and the defendant became "uncontrollable" when he found out and proceeded to wreck its interior. He said he wrote a note to his wife, took a number of seconal pills, and went to look for Langone to "give him a beating." He found Langone at Santarpio's. They argued and the defendant left the bar. As soon as Langone walked out after him the defendant grabbed him. In the course of the struggle Langone pulled a gun. They fought for it, it went off, and

Langone fell down. The defendant, who then had the gun, panicked and fired it as he ran away.

1. At a hearing prior to his first trial, the defendant moved to suppress a note containing incriminating material, apparently written by him to his wife, which was seized by police when they searched the Deeran house on the night of the crime. The motion was denied. The defendant argues that the note was obtained without a warrant in violation of art. 14 of Declaration of Rights of the Massachusetts Constitution, and the Fourth and Fourteenth Amendments to the United States Constitution. It is the contention of the Commonwealth that the search was valid because the defendant's wife consented to it.

The defendant had spent the night and most of the day preceding the crime in the house occupied by his wife and children. He had, however, been separated from his wife for the previous month and was not on the premises at the time of the police search. The note was found on a kitchen table. Any question whether the defendant has standing to raise the issue of the illegal seizure of the note, since his presence on the premises was brief and his possessory interest in the note tenuous, we resolve in his favor. See *Jones* v. *United States,* 362 U. S. 257, 267 (1960). We deal with the contention of the defendant on the assumption that he does have requisite standing to raise the issue of possible constitutional violation of his rights. See *Commonwealth* v. *Appleby,* 358 Mass. 407 (1970).

There is little question that if in fact the defendant's wife consented to the police search of her house that consent suffices to validate a search. In *Commonwealth* v. *Martin,* 358 Mass. 282 (1970), we stamped as valid a warrantless search of the defendant's house because of the consent of his wife who also lived there. We held, at page 288, that "the wife's action is not dependent on the finding of any express or implied authority from the husband to consent to the search, but is based upon her own right, at least equal to that of the husband, to the use, enjoyment and control of their household premises." Accord, *Commonwealth* v. *Appleby,*

*supra; Commonwealth* v. *Mendes,* 361 Mass. 507 (1972).

The defendant argues that his wife's consent was not effective since it was not free and voluntary. However, there was ample evidence, including evidence from Mrs. Deeran herself, that she gave permission to the police to make a trip to her home and, in fact, was in full accord that her mother accompany the police on their expedition. One person gave testimony that the officers stated that they were looking for a gun and would procure a search warrant if permission were not granted. Mere mention of the possibility of obtaining a search warrant is not sufficient to rob Mrs. Deeran's consent of its validity. A very similar situation arose in *Commonwealth* v. *Mendes,* 361 Mass. 507 (1972), and we held the consent valid. Compare *Bumper* v. *North Carolina,* 391 U. S. 543 (1968). There is no evidence to indicate that Mrs. Deeran was subject to police pressure to consent to the search. She may have been excited and upset at the time but she was not herself under any suspicion, and her consent was given in the presence of her mother. When the police arrived at the house the incriminating letter was on the kitchen table available for all to see and, constituting an important piece of evidence as it did, the police not inappropriately seized it. See *Commonwealth* v. *Perez,* 357 Mass. 290 (1970).

2. It is argued that pursuant to its power under G. L. c. 278, § 33E, this court should reduce the charge against the defendant to manslaughter. This argument is based on the close relationship between the decedent and the defendant's wife, and the possibility that the killing took place either "in the heat of passion" (see *Commonwealth* v. *Ransom,* 358 Mass. 580, 583 [1971]), or in self-defence, perhaps exacerbated by the ingestion by the defendant of alcohol and drugs prior to the event. However, we see no justification for the defendant's request that the verdicts of the jury be reduced to manslaughter. See *Commonwealth* v. *Baker,* 346 Mass. 107, 119 (1963).

. Notwithstanding his claim that he was acting in self-defence, the jury could infer that the gun involved in the shooting was his, and that when it was fired by him he was

behind his victim. When he arrived at the bar he appeared "normal" and the jury could have found on what was before them that he had harbored a murderous intent for a considerable period of time prior to his appearance there. It could also have been found that he used the gun intentionally, which generated a presumption of malice. *Commonwealth* v. *Kendrick,* 351 Mass. 203, 209-210 (1966). *Commonwealth* v. *Talbert,* 357 Mass. 146, 148 (1970). The jury, in their verdicts, indicated they had found nothing to rebut that presumption.

The jury, in addition, were tendered a well-rounded charge on manslaughter as well as on first and second degree murder, and their verdicts, viewed against the record and the transcript which we have studied pursuant to our duty under G. L. c. 278, § 33E, are indicative of careful treatment completely justified by what is before us.

3. The defendant alleges error in the admission in evidence to impeach his credibility of records of prior convictions for unlawful possession of a dangerous weapon and unauthorized use of a motor vehicle where he was not represented by counsel and without a showing that he had knowingly and voluntarily waived counsel. He asserts the admission of this evidence constitutes a violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution.

The complaints which were brought against him on these charges in the District Court of Chelsea indicate pleas of guilty and judgments of guilty. They were heard on September 29, 1967. On each of them appears a stamped and signed indorsement as follows: "Date — 9/29/67. I find this defendant not indigent. (signed) John W. McLeod, Justice. Defendant did not want counsel."

The question is raised how far we can rely on this indorsement to demonstrate a waiver by the defendant. It is suggested by the Commonwealth that we are restricted to examining the District Court record as it stands, and that the record is sufficient in itself to prove waiver. The defendant contends that this record is insufficient to show a waiver and

that the testimony before the Superior Court judge, who held a voir dire on the issue, demonstrates that the defendant did not voluntarily waive counsel.

The question arises whether possible failure of compliance with Rule 3:10 of the Supreme Judicial Court vitiates the introduction of the records. The court, with one judge dissenting, thinks not. Impeachment of a witness by the introduction of a crime record of a prior conviction creates constitutional error if the prior conviction was invalid under *Gideon* v. *Wainwright,* 372 U. S. 335 (1963). This would seem to be the holding in *Loper* v. *Beto,* 405 U. S. 473 (1972), and yet in such situations there is a possibility for a finding of harmless error. *Gilday* v. *Commonwealth,* 355 Mass. 799 (1969). *Subilosky* v. *Commonwealth,* 358 Mass. 390, 397 (1970). *Commonwealth* v. *Boudreau,* 362 Mass. 378, 382 (1972). In the *Boudreau* case we found that Rule 3:10 was satisfied by the notation on the face of the complaint for assault and battery of the name of counsel for the defendant. In this instance we have a notation by the judge that the defendant did not desire counsel. We find nothing in *Loper* v. *Beto, supra,* about any constitutional requirements that waiver of counsel be proved in any particular way. We are confirmed in our holding by the defendant's testimony on voir dire that pleading guilty "was the only sensible thing to do, and we were out of there in an hour." He further stated that the police "recommendation, I think, was six months' probation, and he says if I don't go along with it, I'd get a lot more, and that was the only reason I waived counsel, and plus the fact that I could be out of there in an hour." The findings of the trial judge, supported by uncontradicted evidence, demonstrate an adequate waiver of counsel. In the circumstances of this case, failure to prove compliance with the formal requirements of Rule 3:10 does not prevent use of the prior conviction to impeach the defendant.

*Judgments affirmed.*