COMMONWEALTH vs. JASPER DEERAN.

Suffolk.   September 9, 1980. — October 27, 1980.

Present: HALE, C.J., GRANT, & NOLAN, JJ.

*Homicide.   Self-Defense.   Practice, Criminal,*   Instructions to jury, Presumptions and burden of proof.

Evidence at a murder trial was not sufficient to require an instruction with respect to self-defense.   [648-649]

At a murder trial, the judge's instructions with respect to provocation were adequate and properly placed the burden of showing the absence of adequate provocation on the Commonwealth.   [649-650]

In the context of the entire charge at a murder trial, the judge's use of the phrase "If you accept the defendant's version" did not shift the burden of proof to the defendant.   [650]

INDICTMENTS found and returned in the Superior Court on December 16, 1970.

Following the decision of the Supreme Judicial Court reported in 364 Mass. 193 (1973), a motion for a new trial was heard by *Ronan, J.*

*Bernard Grossberg,* for the defendant.

*Jan Roller,* Legal Assistant to the District Attorney (*Michael J. Traft,* Assistant District Attorney, with her) for the Commonwealth.

HALE, C.J.   The defendant's convictions on indictments charging murder and unlawfully carrying a firearm were affirmed by the Supreme Judicial Court in *Commonwealth v. Deeran,* 364 Mass. 193 (1973).   The defendant has appealed from the denial of his motion for a new trial.[1, 2]   The

---

[1] The trial judge having retired, the motion was heard by another Superior Court judge.

[2] Although the motion was addressed to both indictments none of the points argued to us goes to the validity of the conviction on the firearms charge.

motion is based on grounds that the judge's charge (1) was constitutionally inadequate as it did not expressly state that the Commonwealth had the burden of proving beyond a reasonable doubt the absence of self-defense or of provocation (heat of passion) and (2) improperly placed on the defendant the burden of proof on both those issues.[3]

There was evidence that on the evening of September 30, 1970, the defendant went to a restaurant and bar in East Boston, that he appeared "normal" at the time, that he engaged in a private conversation with the victim for ten or fifteen minutes, and that they both thereafter separately left the building by the same exit. Within a brief time the victim was seen by witnesses walking on the sidewalk adjoining the building, with the defendant behind him. A shot was heard. The victim dropped, and the defendant was seen to fire additional shots at him while he was on the ground. Examination of the body of the victim disclosed four gunshot wounds.

The defendant testified that he had gone to his estranged wife's house on September 29 and had spent that night and the next day there. Most of the time was spent arguing, inferably in part, about the fact that Mrs. Deeran was going out with the victim, whom the defendant identified as a "loan shark" from whom he had borrowed money. Mrs. Deeran left the house, and the defendant then became "uncontrollable" and proceeded to wreck its interior. He wrote a note to his wife, took a number of seconal pills, and went to look for the victim to "give him a beating." He went to the restaurant, where he found the victim and told him that he wanted to speak with him. The defendant proceeded toward the door, but the victim stopped him and suggested that they have a drink. They talked and argued at the bar

---

[3] The trial in this case was concluded on February 2, 1972, so the trial judge and counsel did not have the assistance of *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), *Commonwealth* v. *Rodriguez*, 370 Mass. 684 (1976), or their progeny. The holding of *Mullaney* was given retroactive effect in *Hankerson* v. *North Carolina*, 432 U.S. 233, 240-244 (1977). See and contrast *Commonwealth* v. *Collins*, 374 Mass. 596, 599-600 (1978).

about the victim's seeing the defendant's wife.  The victim admitted that he had been seeing the defendant's wife.  The defendant invited the victim outside.  The victim called the defendant a junkie and told him to go outside and that he would be right out.  The defendant went on to testify that he did not have a gun, that he went outside and that the victim came out shortly thereafter.  "When he [the victim] came out of the door, I went at him . . . he pushed me away from him, there's a wall right here, and I went against the wall."  The defendant "went to go at him again, and that's when he [the victim] started pulling that gun out of the inside of his jacket."  The defendant said he did not then know that the object the victim held was a gun, that "I just went for the object.  I got my hands on it, and I realized it was a gun.  I just tried to take it away from him to keep him from shooting me."  The victim tried to prevent the defendant from taking the gun.  The gun went off as the two men struggled.  The victim then fell to the ground.  When he fell, he let go of the gun, leaving it in the defendant's hand.  The defendant panicked and "started firing the gun and running back away from [the victim]."  He testified that he panicked because the victim had tried to shoot him.

We observe that in cases where the requirements of *Mullaney* v. *Wilbur*, 421 U.S. 684 (1975), are at issue we review the jury charge in its entirety to determine whether the constitutional requirements have been met.  *Commonwealth* v. *Fluker*, 377 Mass. 123, 130 (1979).  The standard of review is whether there is a substantial risk that a miscarriage of justice has occurred.  *Gibson* v. *Commonwealth*, 377 Mass. 539, 541 (1979).  *Reddick* v. *Commonwealth*, 381 Mass. 398, 404 (1980).  There was no such risk here.

1.  A charge on self-defense or provocation is only required when one or both of those issues are properly before the jury.  *Commonwealth* v. *Rodriguez*, 370 Mass. 684, 687-689 (1976).  The motion judge ruled that the evidence had not been sufficient to raise the issue of self-defense.  We agree.  We have found nothing in the record from which it could be inferred that the defendant was acting in self-de-

fense.  See *Commonwealth* v. *Costa*, 360 Mass. 177, 184 (1971); *Commonwealth* v. *Lacasse*, 365 Mass. 271, 273 (1974).  The defendant suggests that the Supreme Judicial Court concluded in *Deeran* that there was evidence raising that issue because it referred (364 Mass. at 196) to the defendant's claim "that he was acting in self-defense." That suggestion is rooted in bootstrapping.  We note that the defendant's able trial counsel did not contend in his closing argument that the killing was justified on the ground of self-defense. He argued only that the shooting had been accidental, or alternatively, that it had been provoked in the heat of passion.

2.  In the circumstances of this case we doubt that an instruction on provocation was necessary.[4]  Assuming arguendo that the evidence was sufficient to require an instruction, we agree with the motion judge that the trial judge "gave an adequate and accurate charge on the burden of proof" as to provocation.[5]  By repeatedly placing the burden of proof on the Commonwealth as to all the essential elements of the crime of murder[6] and by explaining what constitutes provocation and the effect of a finding of provocation the judge made clear to the jury that the Commonwealth bore the burden of showing the absence of adequate provocation.  See

---

[4] The defendant has not pointed to any evidence which he claims would have warranted a finding of provocation.

[5] The Supreme Judicial Court described the charge as "well rounded." *Deeran, supra* at 197.

[6] The motion judge did not address the questions of the burden of proof on intent to kill or on accident, as neither was raised by the motion for a new trial.  The defendant still makes no argument as to the charge on accident but now urges that the trial judge's instructions were improper as to intent.  As this issue is raised for the first time on appeal it is not properly before us.  *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 235 (1973).  Nevertheless, to forestall any future attempt to secure a new trial, we state that, having read the charge, we are satisfied that it did not shift the burden of proof to the defendant on the question of intent.  We are also satisfied that the charge, in its entirety, would have impressed the jury that it was the Commonwealth's burden to negate the possibility of accident beyond a reasonable doubt.  See *Commonwealth* v. *Stokes*, 374 Mass. 583, 591 (1978); *Gibson* v. *Commonwealth*, 377 Mass. 539, 541 (1979); *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 841-843 (1980).

*Commonwealth* v. *Stokes,* 374 Mass. 583, 591 (1978); *Reddick* v. *Commonwealth,* 381 Mass. 398 , 404-405 (1980).

3. In addition to his attack on the substance of the trial judge's instructions as to provocation (discussed above) the defendant complains of the form of those instructions. He contends that the trial judge's use of the phrase "If you accept the defendant's version" three times in the jury instructions shifted the burden of proof to the defendant. The Supreme Judicial Court has disapproved of similar language. See *Gibson* v. *Commonwealth,* 377 Mass. 539, 542-543 (1979); *Lannon* v. *Commonwealth,* 379 Mass. 786, 792 (1980). The danger of such language is that it may lead the jury to believe that the defendant must establish particular facts to be acquitted. *Connolly* v. *Commonwealth,* 377 Mass. 527, 534 (1979). Here the "accept" language was used by the judge in the course of illustrating the legal consequences of certain events should the jury find from the evidence that they had occurred. In context, there was nothing said by the judge to suggest that the defendant had the burden of proving any fact. The judge led off this part of his instructions with a reminder to the jury of the Commonwealth's burden of proof beyond a reasonable doubt. He also told them that they could reject testimony even though it was uncontradicted. This tied in with the judge's general instructions on the burden of proof, in which he told the jury, among other things, that the defendant "may sit back and say nothing." At the conclusion of this part of the instructions the judge again told the jury that the Commonwealth had the burden of proving all the elements of the offense beyond a reasonable doubt. This reminder was given in the sentence immediately following the final instance of the "accept" language. While we do not doubt that "accept" language could be used so as to undermine a jury's understanding of the burden of proof, we are satisfied that the jury were not misled by those words in the present case. Contrast *Connolly* v. *Commonwealth, supra* at 535. Compare *Gibson* v. *Commonwealth, supra* at 542-543; *Lannon* v. *Commonwealth, supra* at 791-792.

*Order denying motion for new trial affirmed.*