**William M. GILDAY, Jr., Petitioner, Appellant,**

v.

**Palmer C. SCAFATI, Respondent, Appellee.**

**No. 7527.**

United States Court of Appeals, First Circuit.

June 24, 1970.

---

Daniel F. Featherston, Jr., Boston, Mass., with whom Daniel Klubock, Boston, Mass., was on brief, for appellant.

Jeremiah O'Sullivan, Deputy Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Division, and Lawrence P. Cohen, Asst. Atty. Gen., were on brief for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Petitioner was tried and convicted of armed robbery in the Superior Court of Massachusetts in March 1964 and is presently serving his sentence of 15–25 years. During that trial, after petitioner had testified on his own behalf, the prosecutor offered evidence of five prior convictions to impeach petitioner's credibility, three of which were the product of trials where petitioner neither had nor waived the assistance of legal counsel. Petitioner's appeal from the district court's denial of a writ of habeas corpus presents three issues concerning the use of these three "uncounseled" convictions: whether the rule of Burgett v. Texas, 389 U.S. 109, 115, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967) —that prior "uncounseled" convictions are inadmissible "to support guilt or enhance punishment"—prevents the use of such convictions to impeach a criminal defendant's credibility; if so, whether such rule applies to criminal trials conducted prior to the Court's decision in *Burgett*; and, if so, whether the defendant's conviction can still be sustained

because the improper admission of three such convictions in the case before us constitutes "harmless error beyond a reasonable doubt" within the meaning of Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We, like the district court, answer all three questions in the affirmative.

## I.

The *Burgett* rule is founded on the Court's decision in Gideon v. Wainwright, 372 U.S. 335, 344–345, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that the absence of counsel or waiver in a criminal trial necessarily invalidates the conviction, Chapman v. California, 386 U.S. at 23, 87 S.Ct. 824, because lack of counsel so jeopardizes the fairness of the trial that any ensuing conviction is likely to be unreliable.[1] Desist v. United States, 394 U.S. 244, 250, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). In addition to the unreliability of uncounseled convictions, their use in a subsequent criminal proceeding simply compounds the original denial of the constitutional right to the assistance of counsel. For these reasons, such convictions may not be used "to support guilt or enhance punishment". Burgett v. Texas, 389 U.S. at 115, 88 S.Ct. at 262.

 We conclude that the *Burgett* rule against use of uncounseled convictions "to prove guilt" was intended to prohibit their use "to impeach credibility", for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove,

guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt. Moreover, such use compounds the original denial of the constitutional right just as surely as does use "to prove guilt or enhance punishment". Finally, defendant's privilege to testify or not to testify—Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)—is seriously impaired if the price of testifying is the potential admission of invalid and possibly unreliable convictions which could not otherwise be admitted. We therefore hold that *Burgett* prevents the use of uncounseled convictions for purposes of impeachment.[2] Accord: People v. Coffey, 67 Cal.2d 204, 60 Cal.Rptr. 457, 430 P.2d 15, 25 (1967); Johnson v. State of Maryland, 9 Md. App. 166, 263 A.2d 232 (March 17, 1970); *see* Shorter v. United States, 412 F.2d 428, 431–435 (9th Cir. 1969), cert. denied, 396 U.S. 970, 90 S.Ct. 454, 24 L.Ed.2d 436 (1969). Instructions limiting the use to which the jury may properly put uncounseled convictions are insufficient safeguards when such convictions are invalid and obtained in violation of a specific constitutional right. Burgett v. Texas, 389 U.S. at 115, 88 S.Ct. 258, *see* Tucker v. Craven, 421 F.2d 139 (9th Cir. 1970), cert. denied, 398 U.S. 929, 90 S.Ct. 1822, 26 L.Ed.2d 92 (May 26, 1970).

---

1. Gilday sought to object to the introduction of two of the three counsel-less convictions, seemingly on that very ground, but was cut off. Hence we need not decide in this case whether, at least post-*Gideon*, a defendant represented by counsel should have anticipated *Burgett*, and could fairly be charged, if he failed to object, with waiver in cases where the prior counsel-less conviction is used only collaterally. It must be borne in mind, however, that a defendant must generally know if he was not represented by counsel, whereas the prosecution, in ob-

taining records of convictions from other courts, in all probability does not.

2. In discussing the potential adverse effects of a criminal conviction, the Court in Sibron v. New York, 392 U.S. 40, 55–57, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), made mention of the fact that such convictions might be used to impeach the defendant's character in a subsequent criminal proceeding. Implicit in such discussion was the principle that a criminal conviction could only be used in that manner if the conviction itself was a valid one.

## II.

Our discussion of the scope of the *Burgett* rule foreshadows our view of its retroactivity. Gideon v. Wainwright, *supra,* the progenitor of *Burgett,* has been made retroactive because of the likely unreliability of any uncounseled conviction. Desist v. United States, 394 U.S. at 250, 89 S.Ct. 1030. Chapman v. California, 386 U.S. at 23, 87 S.Ct. 824, indicates that the denial of counsel in a criminal trial could never be "harmless error". The use of *unreliable* evidence obtained in violation of a specific constitutional right does go directly to the fairness of a subsequent trial and conviction—having "a significant effect on the 'integrity of the fact-finding process' ", Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969)—unlike other recent decisions preventing improper police behavior which yield admittedly reliable evidence. *See generally* Desist v. United States, *supra.*

■ In *Desist,* the Court set forth and discussed the three factors relevant to the question of retroactivity. Obviously the purpose of *Burgett* was to prevent the use of possibly unreliable convictions obtained at a trial whose fairness is constitutionally suspect. Secondly, while there had undoubtedly been reliance on a different rule, the importance of counsel at a criminal trial had been recognized in the 1930's and established unanimously in 1963—*see generally* Gideon v. Wainwright, *supra*—a relevant factor in assessing retroactivity. *E. g.,* Berger v. California, 393 U.S. at 315, 89 S.Ct. 540; Roberts v. Russell, 392 U.S. 293, 295, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). Thirdly, while we are not in a good position to assess the nationwide impact of retroactivity for *Burgett,* the Court has observed that even a significant impact must be accepted "when the

issue of guilt or innocence may not have been reliably determined". Roberts v. Russell, 392 U.S. at 295, 88 S.Ct. at 1922. Moreover, discriminating use of the "harmless error" doctrine may lessen the retroactive impact of *Burgett* by sustaining those convictions in which guilt has been reliably determined. Finally, all other federal courts which have considered the issue have applied *Burgett* retroactively.[3] For the reasons stated above, we hold that *Burgett* applies retroactively.

## III.

■ We move now to the question whether the improper admission of three invalid convictions can be considered "harmless error beyond a reasonable doubt" in the circumstances of this case. A preliminary question, however, concerns the propriety of any such discussion: some of the language in *Burgett,* 389 U.S., at 115, 88 S.Ct. 258, might suggest that the "harmless error" doctrine is inapplicable in this context. *See also* Sibron v. New York, 392 U.S. at 56, 88 S.Ct. 1889. However, there is no suggestion in Burgett of such overwhelming evidence of defendant's guilt independent of the prior uncounseled convictions that the Court's refusal to find "harmless error" there constitutes the adoption of a "per se" approach to violations of the *Burgett* rule. More importantly a violation of *Burgett* simply does not necessarily pervade and distort the entire proceeding in the same manner that the partiality of the presiding judge or the denial of counsel at the trial in question does. *See* Chapman v. California, 386 U.S. at 23, n. 8, 87 S.Ct. 824; *see also* Chin Kee v. Commonwealth of Massachusetts, 407 F.2d 10, 13–15 (1st Cir. 1969) (absence of counsel at Massachusetts arraignment was harmless error), cert. denied, 395 U.S. 982, 89 S.Ct. 2143, 23 L.Ed.2d 770 (1969). Rather,

---

3. Williams v. Coiner, 392 F.2d 210 (4th Cir. 1968); Losieau v. Sigler, 406 F.2d 795 (8th Cir. 1969), cert. denied, 396 U.S. 988, 90 S.Ct. 475, 24 L.Ed.2d 452 (1969); Smith v. Crouse, 420 F.2d 373 (10th Cir. 1969); Tucker v. Craven, 421 F.2d 139 (9th Cir. 1970), cert. denied, 398 U.S. 929, 90 S.Ct. 1822, 26 L.Ed.2d 92 (1970); Clark v. Turner, 283 F.Supp. 909 (D.Utah 1968); *see* Bates v. Nelson, 393 U.S. 16, 89 S.Ct. 50, 21 L.Ed.2d 21 (1968).

the introduction of a prior uncounseled conviction is simply one piece of evidence from which guilt might be inferred; it is not itself conclusive evidence that the crime charged has been committed. *Compare* Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession). We therefore conclude that violations of the *Burgett* rule may properly be subjected to the "harmless error" analysis of Chapman v. California, and its progeny. Beto v. Stacks, 408 F.2d 313, 318 (5th Cir. 1969); Tucker v. United States, 299 F.Supp. 1376 (N.D.Cal.1969); People v. Coffey, 60 Cal.Rptr. at 467, 430 P.2d at 25.

Petitioner was tried together with one Bowlen. Theofilopoulos testified that the two defendants entered his neighborhood variety store about 6:30 p. m. on August 17, 1963, with guns drawn, and robbed him, his cash register, and two customers. This testimony was completely corroborated by two eyewitnesses who identified both defendants as the robbers. Subsequent testimony revealed that petitioner had been arrested on the following day for several motor vehicle violations and been found with $1700 in his possession, and that Theofilopoulos had come to the station house and identified petitioner as one of the robbers. Theofilopoulos also told the police, prior to his arrival at the station, that one of the stolen bills had a "76" penciled on it; such a bill was among petitioner's $1700. Three other persons testified concerning petitioner's activities before and after the alleged robbery, providing circumstantial evidence tending to establish petitioner's involvement in a robbery. The prosecution rested.

Petitioner's witnesses sought to impeach the prosecution witnesses, by revealing a prior conviction of Theofilopoulos for being present in a room unlawfully used for gaming and some contradictory statements concerning the amount of money taken from him. Petitioner then took the stand to tell his version of the events of August 17. He and Bowlen entered the variety store around 5:00 p. m. to install five illegal telephones for an illegal gambling operation and to collect an illegal gambling debt. When Theofilopoulos refused to pay, a fight ensued, which petitioner and Bowlen won rather handily before fleeing, without taking any money. Petitioner offered a plausible but unsubstantiated story to explain the $1700 in cash in his possession. Importantly, petitioner admitted being with Bowlen throughout the times in question on August 17.

On cross-examination, the prosecution offered evidence of five prior convictions against petitioner, the three earliest and least serious ones having been obtained when petitioner neither had nor had waived the assistance of counsel.[4] Two of these convictions were admitted over petitioner's objection, with the admonition then and later that they were to be considered only in considering petitioner's credibility.

Petitioner then called to the stand two prosecution witnesses who had not been called by the prosecution. Neither could

4. The convictions were as follows: (1) on February 14, 1955, attempted theft of a handbag, resulting in a sentence of 4 to 5 years at Massachusetts Correctional Institution at Walpole, (2) on February 14, 1955, while armed with a rifle, robbery from the person of a different individual of $40, resulting in a 10 to 20 year sentence at the same institution, (3) on March 20, 1954, assault and battery, in the second District Court of Essex at Amesbury, Massachusetts, with a sentence of 3 months, suspended, and probation for one year, (4) on August 5, 1953, in Municipal Court for the City of Duluth, Minnesota, carrying concealed weapons, resulting in a sentence of 30 days at the County Jail and weapon ordered confiscated, and (5) on September 12, 1951, in Court of Common Pleas, Greene County, Ohio, breaking and entering into a sporting goods store in the nighttime and stealing certain pistols, shotguns, revolvers and miscellaneous sporting goods of value of $2060, at Fairborn, Ohio, resulting in a sentence of probation for one year. Petitioner had the assistance of counsel in (1) and (2).

definitely identify petitioner as one of the robbers, but each testified that he had witnessed an armed robbery at Theofilopoulos' variety store at 6:30 p. m. on August 17, and each identified Bowlen as one of the two robbers. Bowlen then took the stand to offer a version similar to petitioner's account; cross-examination revealed three valid robbery convictions against Bowlen.

The case was submitted to the jury a week after the trial began. After some six hours deliberation, a verdict of guilty was returned against both defendants.

 Viewing all the evidence summarized above, and reported by the district court in more complete detail, we are satisfied that the error of admitting the three uncounseled convictions for purposes of impeachment was "harmless beyond a reasonable doubt". Three witnesses positively identified petitioner as one of the robbers; five so identified Bowlen, whom petitioner admitted having been with throughout the times in question. The quantum of direct evidence against petitioner was as great as in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), while the improperly admitted evidence here is not so directly suggestive of guilt as in *Harrington.*

Petitioner on appeal makes much of the district court's statement that the question before the jury in this case was "whether the entire case of the prosecution was fabricated or whether the entire defense was fabricated". As the district court's opinion makes clear, and we agree, petitioner's credibility was so severely impaired by his own testimony, the testimony of some of the witnesses he called to the stand, and by the proper admission of two more recent felony convictions, that the effect of the three

lesser convictions was surely inconsequential.

### IV.

 Petitioner's remaining contentions concerning his arrest and the police seizure of the $1700 at the station house can be easily resolved. The validity of his arrest has never been presented to any Massachusetts court, thus precluding federal court consideration thereof. Needel v. Scafati, 412 F.2d 761 (1st Cir. 1969), cert. denied, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969); 28 U.S.C. § 2254.

 Assuming that the arrest was valid, the police had the right to conduct a thorough search of his person at the station house. United States v. DeLeo, 422 F.2d 487, 492–493 (1st Cir. 1970), cert. denied, 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648 (1970). Once the $1700 in cash was observed during that search, we cannot believe that the police were obliged to return such a large sum to the arrested petitioner before placing him in jail. *See, e. g.,* Charles v. United States, 278 F.2d 386, 388 (9th Cir. 1960). Moreover, we discern no legitimate objection to the fact that the police contacted other authorities concerning any recent thefts of this amount of money.

These contacts led the police to Theofilopoulos, who identified petitioner as one of the robbers and mentioned the distinctive markings on the bill. Since the police at this point had proper custody of the money and now had reason to suspect that it was stolen, we discern no objection to the fact that it was shown to Theofilopoulos to determine whether the "76" marking which he had mentioned, which appeared on one of the bills taken from petitioner, was indeed the marking which Theofilopoulos had affixed.

Affirmed.