COMMONWEALTH *vs.* MELVIN BARRETT.

Suffolk.    March 12, 1973. — May 31, 1973.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Evidence,* Judicial notice, Other offence, Impeachment of witness' credibility, Presumptions and burden of proof. *Constitutional Law,* Assistance of counsel. *Error,* Whether error harmful.

This court did not take judicial notice of the fact that a defendant charged with murder had been represented by counsel at a prior trial for a crime of violence, where an appearance slip of that counsel was submitted to this court but had not been introduced at the murder trial. [334-335]

In a murder case in which the evidence of guilt was not overwhelming and the credibility of the defendant was critical to his defense, it was constitutional error, which was not harmless beyond a reasonable doubt and was reversible, to permit the prosecution to introduce, for the purpose of impeaching the defendant's credibility, a record of his prior conviction for a crime of violence without proof by the prosecution that he had been represented by or had waived counsel at the prior trial. [335-337]

INDICTMENT found and returned in the Superior Court on April 7, 1967.

The case was tried before *Fairhurst, J.*

*Richard J. Vita* (*Robert V. Greco* with him) for the defendant.

*William A. Doherty,* Assistant District Attorney, for the Commonwealth.

HALE, C.J.   At a trial held subject to G. L. c. 278, §§ 33A-33G, before a Superior Court judge and jury, the defendant was convicted under an indictment charging him with second degree murder. He was sentenced to life imprisonment. The case is before us on the defendant's assignment of errors.

From the evidence the jury could have found as follows. During the afternoon of February 1, 1967, the defendant and the victim, Laurence Hatch, were playing pool together in a poolroom located at 971 Tremont Street, Boston. At the end of the game the victim had lost about $25 to the defendant and still owed him $3. An argument ensued over this debt. The argument continued outside when the two men left the poolroom some time after 5:00 P.M. There was evidence that they were going to the victim's home where he would pay the defendant the $3. The two men were then observed running across Tremont Street, the defendant chasing the victim. The defendant had his hand raised in the air and was holding a "shiny object." On Tremont Street at the curbstone a witness observed a downward motion of the defendant's hand. The two men disappeared down Hammond Street. About five or six minutes later the defendant reappeared on Tremont Street, ran to a taxicab and departed.

At some time between 5:45 and 6:00 P.M. that same day the victim's brother, Randall Hatch, who was sitting in his car, observed the victim calling from a third-story window in their home. He went upstairs and found his brother lying on the floor with blood on his clothing and around his neck. The victim was taken to the Boston City Hospital where he died. In February of 1968 a warrant was served on the defendant, who was by then in the custody of the San

Francisco police department. The defendant was returned to Boston to stand trial. At the trial the defendant testified that he had not engaged in an argument with the victim at the poolroom, that he had parted company with the victim upon leaving the poolroom, and that he had not seen the victim thereafter.

1. During the cross-examination of the defendant, and subject to the defendant's objection and exception, the prosecution introduced certified copies of the records of two prior convictions of the defendant. G. L. c. 233, § 21. The defendant has waived his assignment of error with respect to the first record of conviction. The second record, which is the subject of the present assignment of error, was of a conviction in the Superior Court on March 22, 1960, for assault and battery with a dangerous weapon. The record also disclosed that the defendant had been sentenced to one year in a house of correction. There was no indication on the record of conviction presented to the judge, or any testimony elicited at the trial, that the defendant had been represented by or had waived counsel at that proceeding. The defendant contends that the admission in evidence of such record was error.

At the time of the argument before this court the prosecution submitted for our consideration a copy of a paper filed in Superior Court in the prior case approximately two weeks prior to the conviction in question and purporting to be an appearance of counsel in the defendant's behalf. We must first resolve whether we may take judicial notice of the fact that the defendant had the assistance of counsel at the time of his conviction in 1960. Judicial notice has been taken of certain aspects of legal proceedings. See *Commonwealth* v. *DiStasio,* 298 Mass. 562, 567 (transcript in court files under an earlier appeal); *Cosmopolitan Trust Co.* v. *Suffolk Knitting Mills,* 247 Mass. 530, 532, (other decisions of same court indicating a party's insolvency); *Culhane* v. *Foley,* 305 Mass. 542, 543 (duplicates of exhibits which were part of court's files in an earlier appeal); *Matter of Welansky,* 319 Mass. 205, 210 (earlier criminal proceedings before the same judge). The

power of a court to take judicial notice of a fact is justified on the theory that "the Court assumes that the matter is so notorious that it will not be disputed." Wigmore, Evidence (3d ed.) § 2567. Thus the matter that is to be judicially noticed must be accorded such strong authoritative significance that evidence in contradiction will ordinarily not be considered. See *Commonwealth* v. *Marzynski,* 149 Mass. 68, 72; Wigmore, Evidence (3d ed.) § 2565.

It is apparent that the doctrine of judicial notice has been subject to stringent control. Great caution is to be exercised in the present case in light of the dangers inherent in the use of prior convictions, obtained in the absence of counsel, to impeach a witness. See *Gilday* v. *Scafati,* 428 F. 2d 1027, 1029 (1st Cir.); *Loper* v. *Beto,* 405 U. S. 473, 483. Had the appearance slip been introduced at the trial the defendant would have had the opportunity to dispute any implication that he was represented by counsel at the time of his prior conviction. Accordingly, he should not be deprived of that opportunity by our taking judicial notice of an appearance for the defendant.

We now consider the defendant's contention that, in the absence of a showing by the Commonwealth that the defendant either had or had waived counsel in the prior criminal proceeding, the admission in evidence of the record of his prior conviction was in violation of his constitutional rights. In *Burgett* v. *Texas,* 389 U. S. 109, the United States Supreme Court held that the admission in evidence of prior convictions in which a criminal defendant had been without counsel for purposes of supporting guilt or enhancing punishment was unconstitutional. Subsequently in *Loper* v. *Beto, supra,* the court clarified an uncertainty in the *Burgett* case by extending this rule to the use of records of prior conviction to impeach credibility. See also *Gilday* v. *Commonwealth,* 355 Mass. 799; *Gilday* v. *Scafati, supra,* at 1029.

In the present case the judge admitted the record of conviction on the supposition that the burden of proof was on the defendant to establish the fact that he was not represented by counsel at the time of the prior conviction.

That assumption was erroneous. The burden of proof is firmly placed on the prosecution under the rule announced in *Gilday* v. *Commonwealth, supra.* In that case the court stated unequivocally that "no record of prior conviction henceforth should be offered to impeach credibility unless the witness thus attacked can be shown to have had or waived counsel in the proceedings certified by the record."[1] Nor was this allocation of the evidentiary burden merely a temporary measure employed due to the uncertainties regarding the *Burgett* decision. This same rule was later reaffirmed in *Commonwealth* v. *Boudreau,* 362 Mass. 378, 381-382, which was decided after *Loper* v. *Beto, supra,* had clarified the applicability of the *Burgett* case to the use of prior convictions for impeachments. Inasmuch as we have before us a trial record that is silent as to the absence or waiver of counsel, we can indulge no presumption that the defendant had or waived counsel at the prior criminal proceeding. See *Carnley* v. *Cochran,* 369 U. S. 506, 516; *Ingram* v. *Wingo,* 320 F. Supp. 1032, 1034 (E. D. Ky.); *United States* v. *Wilkins,* 303 F. 2d 883, 885 (2nd Cir.); *Harris* v. *Boles,* 349 F. 2d 607, 610 (4th Cir.).

Finally, we consider whether the reception of evidence of the prior conviction, constitutionally erroneous under the decisions in the *Burgett* and *Loper* cases may, in the circumstances of the present case, be deemed harmless beyond a reasonable doubt under *Chapman* v. *California,* 386 U. S. 18, 24. The evidence of guilt in this case was far from overwhelming. The inculpatory evidence was largely circumstantial. There were no eyewitnesses to the killing. A weapon was never recovered. The defendant's alleged motive was a $3 debt. The credibility of the defendant was critical. He denied having killed the victim. He also denied that they had engaged in an argument prior to the killing. Against this background the prejudicial impact of a prior conviction was not slight. Realistically speaking, its use could not have avoided some implication of guilt, see

---

[1] Cf. *Commonwealth* v. *Bowlen,* 351 Mass. 655, 659, decided prior to *Burgett* v. *Texas, supra.*

*Gilday* v. *Scafati, supra,* at 1029; McCormick, Evidence (2d ed.) § 43, p. 89, especially since the prior conviction was for a crime similar to the one now under consideration. *United States* v. *Puco,* 453 F. 2d 539, 542 (2nd Cir.). We must also consider that the prior conviction was for a crime of violence and its prejudicial impact was not excused by its bearing on the defendant's veracity. See *United States* v. *Puco, supra,* at 543. Cf. *Gordon* v. *United States,* 383 F. 2d 936, 940 (D. C. Cir.). In the circumstances of this case we cannot say that the evidence complained of "did not contribute to the verdict obtained." *Chapman* v. *California, supra,* at 24. See *Loper* v. *Beto,* 405 U. S. 473, 482-483, fn. 11.

2. The defendant contends that the judge erred in denying his motion for a directed verdict as there was insufficient evidence to warrant a conviction of second degree murder. While the prosecution's case was based on circumstantial evidence, its probative value could properly be considered by the jury. *Commonwealth* v. *Medeiros,* 354 Mass. 193, 197, and cases cited. We have reviewed the evidence and are satisfied that the reasonable inferences to be drawn therefrom supported the verdict.

The defendant's remaining assignments of error concern questions of evidence and jury instructions. In each instance the defendant failed to comply with the procedural requirements for preserving his right to appellate review. In view of our disposition of the case, a discussion of these questions is unnecessary.

*Judgment reversed.*
*Verdict set aside.*