[No. 675-3.    Division Three.    December 23, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHN LOUIS MURRAY, *Appellant*.

R. *Max Etter, Sr.,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

MUNSON, J.—Defendant appeals from a judgment and sentence entered after a jury returned a verdict of guilty to the charge of second-degree assault. By special interrogatory, the jury also found the defendant to have been in possession of a deadly weapon at the time of the assault. Defendant was originally charged with first-degree assault and was convicted of the lesser included offense.

The incident upon which the charge was based occurred on December 23, 1971, in a downtown restaurant in Spokane, Washington. While defendant was in the restaurant, an argument ensued between him and a waitress concerning a cover charge. The defendant thereafter left the restaurant and returned several times. On the occasion of the last return, the defendant slapped a friend of the waitress, Mr. Gaustad. Immediately thereafter the waitress approached the table and demanded to know what was going on. At that time the defendant slapped her, with sufficient force to throw her off balance, pulled a pistol from his belt, and fired one shot. The shot struck the waitress in the liver. The defendant thereupon left the restaurant and was later apprehended.

Several witnesses testified that the defendant looked and aimed directly at the witness when he fired. The defendant testified he was merely trying to push her out of the way so that he could get a clear shot at a man, approaching from behind her, who appeared to be holding a gun. Testimony indicated that a bartender was in fact approaching from behind the waitress with a Mace gun in his possession.

Trial upon the assault charge commenced on May 30, 1972. During cross-examination of the defendant, the State inquired about his prior criminal convictions, ostensibly to impeach his credibility. One of these convictions was for grand larceny for knowingly possessing stolen property. This court reversed that conviction subsequent to this trial and prior to the oral argument in the instant case. *State v. Murray*, 8 Wn. App. 944, 509 P.2d 1003 (1973), *aff'd*, 84 Wn.2d 527 (1974). Defendant now contends that since this division held that conviction to be based upon an unconstitutional search, this case must be reversed because the use of a constitutionally infirm conviction is per se prejudicial to the defendant. *Burgett v. Texas*, 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967); *United States v. Tucker*, 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972). We agree.

In *Burgett v. Texas, supra* at 115, the Supreme Court held the introduction of a prior conviction, either "to support guilt or enhance punishment for another offense . . ." to be error if the prior conviction is later deemed constitutionally infirm because of a denial of right to counsel under *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963). *United States v. Tucker, supra,* reaffirmed this basic rule. The *Burgett* rule will apply in this case and necessitate reversal if: (1) use of a prior conviction to impeach a defendant falls under the "to support guilt" language of *Burgett,* and (2) use of a prior conviction, void because of an improper search and seizure under the Fourth and Fourteenth Amendments, is equally as prejudicial as the use of a conviction, void because of failure to accord a defendant his right to counsel under the Sixth and Fourteenth Amendments.

In *Tucker* both the United States District Court and the Circuit Court of Appeals concluded that the use of constitutionally invalid prior convictions on cross-examination for impeachment purposes was error. *Tucker v. United States,* 299 F. Supp. 1376 (N.D. Cal. 1969) and *Tucker v. United States,* 431 F.2d 1292 (9th Cir. 1970), respectively. Each court, however, found the error to have been harmless. The Supreme Court in its consideration of *Tucker* did not reach this question.

In *Gilday v. Scafati,* 428 F.2d 1027, 1029 (1st Cir. 1970), *cert. denied,* 400 U.S. 926, 27 L. Ed. 2d 186, 91 S. Ct. 188 (1970), it was stated:

We conclude that the *Burgett* rule against use of uncounseled convictions "to prove guilt" was intended to prohibit their use "to impeach credibility", for the obvious purpose and likely effect of impeaching the defendant's credibility is to imply, if not prove, guilt. Even if such prohibition was not originally contemplated, we fail to discern any distinction which would allow such invalid convictions to be used to impeach credibility. The absence of counsel impairs the reliability of such convictions just as much when used to impeach as when used as direct proof of guilt. Moreover, such use compounds the original denial of the constitutional right just as surely as does use "to prove guilt or enhance punishment". Finally, defendant's privilege to testify or not to testify . . . is seriously impaired if the price of testifying is the potential admission of invalid and possibly unreliable convictions which could not otherwise be admitted. We therefore hold that *Burgett* prevents the use of uncounseled convictions for purposes of impeachment. [Footnote omitted.] . . . Instructions limiting the use to which the jury may properly put uncounseled convictions are insufficient safeguards when such convictions are invalid and obtained in violation of a specific constitutional right.

*Cf. State v. Koch,* 118 N.J. Super. 421, 288 A.2d 295 (1972); *Spaulding v. State,* 481 P.2d 389 (Alas. 1971); *Johnson v. State,* 9 Md. App. 166, 263 A.2d 232 (1970); *Subilosky v. Commonwealth,* 358 Mass. 390, 265 N.E.2d 80 (1970).

■ We fail to see a distinction between the use of a constitutionally void uncounseled conviction and one dependent entirely upon an unconstitutional search. In *Beto v. Stacks*, 408 F.2d 313 (5th Cir. 1969), a prior conviction, later set aside because based upon an unlawful seizure under the Fourth Amendment, was used to enhance or increase Stack's sentence for robbery. In reversing defendant's conviction for robbery, the court held that *Burgett* prohibits the use of convictions void under the Fourth Amendment, stating at page 316:

> In response to appellant's first argument, we do not find Burgett v. Texas distinguishable from the present case on the ground that appellee herein was denied no specific "federal right." Burgett v. Texas, 389 U.S. at 115, 88 S.Ct. 258, 19 L.Ed.2d 319. *Burgett* involved the use for purposes of enhancement of a conviction that was presumptively void under the Sixth Amendment. The present case involves the use of a conviction for purposes of enhancement that is definitely void under the Fourth Amendment. Whatever the differences between these two constitutional rights, and whatever the seriousness of their respective impingements, they are both rights guaranteed by the United States Constitution and made applicable to the states by the Fourteenth Amendment. Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. As such they are both "specific federal rights" as that term is used in *Burgett*.
>
> . . . While it is true that the use of evidence resulting from an unlawful search and seizure is less likely to affect the integrity of the fact-finding process than the denial of counsel at trial, . . . *the creation of such a constitutional hierarchy is not part of the rationale of Burgett.*

(Italics ours.) We agree with the *Gilday* court and hold impeachment is one method by which the state may "support guilt" by attacking the defendant's credibility. Likewise, the rationale of *Beto v. Stacks, supra,* is applicable. Therefore, under *Burgett,* the use of the conviction in *State v. Murray, supra,* to impeach the defendant's credibility was error.

■ In fairness to the trial court, it should be pointed out that at the time of trial in this case, *State v. Murray, supra,* was on appeal before this court and had been neither argued nor decided. Our Supreme Court has held it is not improper to cross-examine a defendant concerning a prior conviction from which an appeal is pending at the time of trial even if the prior conviction is subsequently reversed. *State v. Robbins,* 37 Wn.2d 492, 224 P.2d 1076 (1950).

However, *Robbins* was decided prior to *Burgett* and the court did not have the benefit of the rationale used in Burgett and its progeny. If the State desires to use prior convictions, which are on appeal, for the purpose of impeachment, it must recognize that it runs the risk of an appellate court finding constitutional infirmity. It should be noted, however, that there are many grounds for reversal other than those which are constitutional in nature. This rule applies only to those which are constitutionally infirm. *Cf. United States v. Lufman,* 457 F.2d 165, 168 (7th Cir. 1972), commenting on *United States v. Liles,* 432 F.2d 18 (9th Cir. 1970); *Gerberding v. Swenson,* 435 F.2d 368, 370 (8th Cir. 1970), *cert. denied,* 403 U.S. 906, 29 L. Ed. 2d 682, 91 S. Ct. 2211 (1970).

■ This issue, however, is not conclusive once the use of a conviction is found to have been error. As is discussed in *United States v. Tucker, supra,* and other cases cited above, even if the use of a prior conviction was error, it may be harmless error. The violation of the *Burgett* rule does not necessarily entitle the defendant to reversal per se. *Gilday v. Scafati, supra*; *Beto v. Stacks, supra.* However, in this case the only defense was that of self-defense, as viewed from the position of the defendant when he testified to a man coming towards him with what he thought was a firearm. *Cf. State v. Ladiges,* 66 Wn.2d 273, 401 P.2d 977 (1965); *State v. Lewis,* 6 Wn. App. 38, 491 P.2d 1062 (1971). His defense was based almost entirely upon his own credibility. Where the defense rests mainly upon the defendant's credibility, we are unable to say that use of a

334

constitutionally invalid conviction to impeach defendant's testimony was harmless error. *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Martin*, 73 Wn.2d 616, 440 P.2d 429 (1968), *cert. denied*, 393 U.S. 1081, 21 L. Ed. 2d 773, 89 S. Ct. 855 (1969).

■ The second assignment of error relates to the failure of the court to instruct the jury to consider defendant's prior criminal convictions for impeachment purposes only. Such instruction was not requested by the defendant. He contends, however, that it is the trial court's responsibility to submit such an instruction to the jury sua sponte. We disagree.[1] This is not a sua sponte situation.[2] Defendant is entitled to the instruction, but only upon his own request. *State v. Mayner*, 4 Wn. App. 549, 483 P.2d 151 (1971); *State v. Thompson*, 3 Wn. App. 332, 474 P.2d 906 (1970); *see also State v. Passafero*, 79 Wn.2d 495, 487 P.2d 774 (1971).

Thirdly, defendant states the court erred in failing to sustain an objection to the prosecutor's question during cross-examination wherein he asked the defendant if he had a permit to carry a gun. The court stated, in ruling upon the objections, "There is no charge for carrying a weapon without a permit or license, but the objection is overruled and the evidence is admissible for another purpose." The court did not elucidate the other purpose and there is no indication in the record of the purpose for which the prosecutor introduced this evidence.

On retrial, a statement of the purpose of this evidence would be helpful. We hasten to note that in *State v. Odom*, 83 Wn.2d 541, 520 P.2d 152 (1974), and *State v. Rogers*, 83

[1]Defendant's counsel has been a member of the Washington State Bar for 37 years; has held positions as Assistant United States Attorney, Assistant Attorney General, Deputy Prosecuting Attorney, Special States Attorney; has been admitted to practice before the United States Supreme Court and the United States Court of Appeals, 9th Circuit and several United States District Courts; and among other professional recognitions, is a Fellow, International Academy of Trial Lawyers.

[2]*Cf. State v. Porter*, 3 Wn. App. 737, 477 P.2d 653 (1970).

Wn.2d 553, 520 P.2d 159 (1974), the statutory presumption created by RCW 9.41.030, that a person armed with an unlicensed pistol intended to commit a crime of violence, the court held the statute to be "an unconstitutional intrusion upon the rights of the defendant, . . ." *State v. Rogers, supra* at 556. We need not comment further.

■ Fourthly, defendant alleges that the court erred in not giving his proposed instruction regarding self-defense. While the particular paragraph proposed by the defendant has been approved in *State v. McConaghy,* 84 Wash. 168, 146 P. 396 (1915), the instruction given was sufficient to allow the defendant to argue his theory of the case. No more is required. *State v. Morgison,* 5 Wn. App. 248, 486 P.2d 1115 (1971).

■ The last assignment of error relates to the failure to state in the information that the prosecutor sought a special penalty as provided by RCW 9.41.025(1) as is now required by *State v. Frazier,* 81 Wn.2d 628, 635, 503 P.2d 1073 (1972). However, in this case the State did not seek the additional penalty provided by RCW 9.41.025(1). Defendant was sentenced to not more than 10 years in the penitentiary as provided by the second-degree assault statute, RCW 9.11.020. The State, however, did seek the mandatory minimum penalty authorized under RCW 9.95.015, which requires the jury, by special interrogatory, to find the defendant to have been armed with a deadly weapon. The jury, in fact, did find defendant to have been so armed. This was proper in this case because the charging portion of the information did properly include the deadly weapon allegation and specifically referred to RCW 9.95.015. As long as the information includes this allegation, submission of the special interrogatory is proper. *State v. Mims,* 9 Wn. App. 213, 511 P.2d 1383 (1973).

Judgment is reversed.

GREEN, C.J., and McINTURFF, J., concur.

Petition for rehearing denied January 14, 1975.

Review granted by Supreme Court March 25, 1975.