COMMONWEALTH *vs.* KEVIN SAUNDERS.

No. 99-P-462.

Plymouth. September 15, 2000. - February 14, 2001.

Present: LENK, DREBEN, & GILLERMAN, JJ.

Further appellate review granted. 434 Mass. 1102 (2001).

*Practice, Criminal,* Impeachment by prior conviction, Presumptions and burden of proof. *Due Process of Law,* Impeachment by prior conviction. *Evidence,* Prior conviction, Voice identification. *Error, Harmless. Identification. Search and Seizure,* Exigent circumstances.

This court concluded that a conviction with respect to which a defendant was not shown to be represented by counsel may not, consistent with due process, be used to revive an otherwise stale, counseled conviction for purposes of impeachment, under G. L. c. 233, § 21, Second; and the burden remains on the Commonwealth to demonstrate either representation by counsel or a valid waiver of counsel with respect to such a conviction. [869-871]

At the trial of a criminal case in 1996, the judge erred in allowing the Commonwealth to use an otherwise stale 1983 conviction for impeachment purposes, where the Commonwealth did not demonstrate that the defendant was represented by counsel or waived counsel in the 1988 case that "revived" the earlier conviction pursuant to G. L. c. 233, § 21, Second. [871]

At the trial of a criminal case in which the decisive issue was the defendant's credibility and he was the only defense witness, the Commonwealth's case was not so strong as to overcome the prejudice of the erroneous admission of a stale conviction to impeach the defendant: a new trial was required. [871-873]

At a criminal trial, there was no error in the judge's admitting in evidence a one-on-one out-of-court voice identification that was not made under unnecessarily suggestive circumstances. [873-874]

There was no error in a judge's conclusion that the Commonwealth demonstrated, at a hearing on a motion to suppress evidence, that exigent circumstances justified police officers' warrantless search of the defendant's apartment. [874-876]

INDICTMENTS found and returned in the Superior Court Department on March 12, 1996.

A pretrial motion to suppress evidence was heard by *Patrick F. Brady,* J., and the cases were tried before *Judith A. Cowin,* J.

*Claudia Leis Bolgen* for the defendant.

*John E. Bradley*, Assistant District Attorney, for the Commonwealth.

LENK, J. The defendant, Kevin Saunders, was tried before a jury on four indictments charging armed robbery, unarmed assault with intent to rob, and assault and battery (two indictments), all on two employees of a donut shop in the early morning hours of January 24, 1996. Saunders was convicted of the lesser included offense of unarmed robbery as well as of the latter two offenses.

On appeal, the defendant claims error in two respects. First, he contends that it was an error of constitutional dimension for the trial judge to have allowed the Commonwealth to impeach the defendant pursuant to G. L. c. 233, § 21, with an otherwise stale but counseled conviction that was revived by a subsequent fresh conviction as to which the Commonwealth failed to show that the defendant had or waived counsel. Second, the defendant claims error in the failure to suppress (a) a suggestive out-of-court identification of the defendant, and (b) evidence seized during a warrantless search of the defendant's apartment. We address each in turn, reciting those facts necessary to orient and address the errors asserted.

*Facts.* The Commonwealth presented evidence that at about 3:00 A.M. on January 24, 1996, two employees of a donut shop, a female counterperson and a male baker, were at work when an unknown male entered the store asking to use the bathroom. When refused, he came behind the counter, demanded money, and grabbed the female employee around her neck and mouth. She eluded the intruder and called to the baker for help. After trying unsuccessfully to open the cash register, the intruder ordered the baker to the front of the store, told him he had a gun, kept his hand in his pocket, and threatened to shoot the baker if he did not open the cash register. The baker could not do so and the intruder punched him several times in the head with his fist. The intruder finally fled after taking some cash and a driver's license from the baker's pocket.

The police were called. The employees gave similar but not identical descriptions of a black male with distinctive large lips and a round face, about five feet seven to ten inches tall, of rugged build, and wearing a multi-colored plaid shirt or jacket under a dark overcoat with a ski mask partially obscuring his face. This description was broadcast to police on patrol. In ad-

dition, there was a black and white store videotape of portions of the robbery while in progress depicting the perpetrator as a black male wearing a plaid shirt or jacket and a ski mask.

At about 3:35 A.M., a police officer in a marked cruiser about a mile from the donut shop saw a male of this description drive past with two females, and gave chase. The cars stopped in a housing complex and the male fled into an apartment. Ultimately, after the defendant was taken into custody several hours later, the baker came to the police station. Initially, he could not identify the defendant; he later did so, first by voice and then after taking a second look. The counterperson selected the defendant's photograph that morning from an array at the police station. At trial, both identified the plaid shirt or jacket seized from the apartment where the defendant had been arrested, and again identified the defendant as the robber.

The defense was misidentification, and the defendant testified that he had been at a party until 5:00 A.M., then left with two women in a borrowed car to get cigarettes. Finding the shops closed, he went to his apartment. While acknowledging that he had seen a police car behind him on the road as he was driving to the apartment, he insisted that he had seen neither blue lights nor any attempt by the police to stop him along the way or after he left the car en route to his apartment. He denied having gone to the donut shop on the night in question, denied assaulting or attempting to rob the shop employees, and denied having a gun or ski mask.

*Impeachment.* Prior to trial in July, 1997, both defense counsel and the prosecutor sought the judge's ruling on whether, if he were to testify, the defendant's eight prior convictions — three felony convictions from 1988 and four felony convictions and one misdemeanor conviction from 1983 — could be used to impeach him pursuant to G. L. c. 233, § 21. During the trial, the judge excluded all but the 1983 felony conviction for kidnapping, as to which the Commonwealth showed that the defendant had been represented by counsel. That 1983 conviction, however, was stale under the relevant portion of G. L. c. 233, § 21, Second,[1] and thereby inadmissible for impeachment purposes unless revived by another conviction occurring

---

[1]General Laws c. 233, § 21, provides, in pertinent part: "Second, The record of his conviction of a felony upon which no sentence was imposed or a sentence was imposed and the execution thereof suspended, or upon which a fine only was imposed, or a sentence to a reformatory prison, jail, or house of

within ten years of the time of the defendant's trial testimony. The judge turned in this regard to one of the 1988 convictions she had earlier excluded. That 1988 conviction for armed assault in a dwelling house had been excluded because the Commonwealth had not shown that the defendant had been represented by or waived counsel at such proceeding.[2] Nonetheless, the judge ruled that, while the 1988 conviction could not itself be used to impeach the defendant, it could be used to revive the otherwise inadmissible 1983 conviction for impeachment purposes.

The defendant maintains that his due process rights were violated when the judge permitted the Commonwealth to use an uncounseled conviction to revive an otherwise time-barred but counseled conviction for the purpose of using that revived conviction to impeach his credibility at trial. Reduced to essentials, the defendant's argument is that, because an uncounseled felony conviction cannot be used by the Commonwealth to impeach a defendant's credibility, the use of such an uncounseled conviction to revive another counseled but stale felony conviction that is then used to impeach is equally impermissible insofar as the reviving conviction is the sine qua non of the impeachment that occurred.

The proscription against the use of uncounseled convictions to impeach a defendant has its origins in a handful of decisions from the United States Supreme Court, viz., *Gideon* v. *Wainwright*, 372 U.S. 335 (1963), *Burgett* v. *Texas*, 389 U.S. 109 (1967), *United States* v. *Tucker*, 404 U.S. 443 (1972), and *Loper* v. *Beto*, 405 U.S. 473 (1972). *Gideon* established the rule that, "[i]n the absence of waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer." *Loper* v. *Beto*, 405 U.S. at 481. *Burgett* forbade convictions obtained in violation of *Gideon* to be used against a defendant "either to support guilt or enhance punishment for another offense." *Burgett* v. *Texas*, 389 U.S. at 115. In *Tucker*,

correction, shall not be shown for such purpose after ten years from the date of conviction, if no sentence was imposed, or from the date on which sentence on said conviction was imposed, whether the execution thereof was suspended or not, unless he has subsequently been convicted of a crime within ten years of the time of his testifying. For the purpose of this paragraph, a plea of guilty or a finding or verdict of guilty shall constitute a conviction within the meaning of this section."

[2]The Commonwealth had not shown either that any of the 1988 felony convictions were counseled or that the defendant had waived counsel.

the Court considered the aspect of *Burgett* that prohibits the use of invalid — because uncounseled — convictions to enhance the length of a sentence, and concluded that resentencing was necessary. See discussion in *Loper, supra* at 482. In *Loper,* the Court considered the other aspect of *Burgett,* viz., whether prior convictions shown by the defendant to have been obtained in violation of *Gideon* could be used to impeach his credibility at trial and thereby to support his guilt. The Court concluded they could not because the absence of counsel impairs the reliability of convictions "just as much when used to impeach as when used as direct proof of guilt." *Loper* v. *Beto,* 405 U.S. at 483, quoting from *Gilday* v. *Scafati,* 428 F.2d 1027, 1029 (1st Cir.), cert. denied, 400 U.S. 926 (1970).

It has been clear in Massachusetts at least since *Gilday* v. *Commonwealth,* 355 Mass. 799, 799 (1969), that "no record of prior conviction henceforth should be offered to impeach credibility unless the witness thus attacked can be shown to have had or waived counsel in the proceedings certified by the record." In *Commonwealth* v. *Proctor,* 403 Mass. 146, 147 (1988), the court noted that "[t]he reason for these rules is that, because convictions obtained in the absence of counsel are unreliable, use of prior convictions against a defendant violates due process principles absent a showing that the defendant was represented by or had waived counsel." It has also long been clear that the burden to make this "showing" rests squarely on the prosecution. *Carey* v. *Zayre of Beverly, Inc.,* 367 Mass. 125, 128 (1975). *Commonwealth* v. *Cook,* 371 Mass. 832, 833 (1977).

It is undisputed here that the Commonwealth did not make such a showing as to the reviving 1988 conviction and that the defendant's 1983 conviction could not be used against him absent the 1988 conviction. Under our case law, absent proof by the Commonwealth that the 1988 conviction was counseled, that conviction must be deemed uncounseled and hence unreliable for use against the defendant. The issue then becomes whether the unreliable 1988 reviving conviction was used "against the defendant," when it was the revived 1983 conviction that was put before the jury to impeach him. We analyze this in light of the role accorded reviving convictions in our statutory scheme.

The statute permitting impeachment by prior convictions, G. L. c. 233, § 21, allows the use of prior convictions to attack a witness's credibility only when specified time criteria are

satisfied. As relevant here, the provisions of G. L. c. 233, § 21, Second, protect a witness from being impeached with an old felony conviction so long as the witness has maintained a clean record for the ten years preceding his testimony. The purpose of the statutory time constraints and the role accorded reviving convictions is illuminated by the rationale for permitting impeachment by prior conviction, i.e., " 'the defendant's past conduct may have a tendency to demonstrate present untruthfulness; that is, a defendant's earlier disregard for the law may suggest to the fact finder similar disregard for the courtroom oath.' *Commonwealth* v. *Roucoulet*, 22 Mass. App. Ct. 603, 608 (1986)." *Commonwealth* v. *Drumgold*, 423 Mass. 230, 249 (1996), quoting from *Commonwealth* v. *Fano*, 400 Mass. 296, 302-303 (1987). The statute accords significance to the difference between witnesses who, having once committed a crime, continue to do so, and those who have stopped doing so. For the recidivist witness, the old felony conviction continues to have a tendency to demonstrate present untruthfulness. In contrast, for the witness who has mended his ways, the old felony conviction is no longer probative of present credibility.

Under this statutory scheme, the reviving conviction plays a pivotal role in determining whether past criminal conduct can be used against a witness. Because the reviving conviction in this sense is probative of present credibility and can thereby be used against a defendant to support his guilt, we discern no functional basis for differentiating between the degree of reliability necessary for a reviving conviction and that necessary for the conviction it revives. To be reliable, both must be counseled. Otherwise put, a presumptively unreliable because uncounseled conviction cannot, consistent with due process, be used to revive a stale but counseled conviction.[3]

The Commonwealth offers no contrary analysis other than to

---

[3]The Commonwealth relies upon *Lewis* v. *United States*, 445 U.S. 55 (1980), in urging the point that an uncounseled conviction is not invalid for all purposes and should be deemed valid here for reviving purposes. We think *Lewis* distinguishable. The analysis in *Lewis* was directed to the use of prior convictions under the Federal gun law, 18 U.S.C. App. § 1202(a)(1), as amended, of Title VII of the Omnibus Crime Control and Safe Streets Act of 1968, which makes it a crime for one who has been convicted of a felony subsequently to possess a firearm. The *Lewis* majority stressed that the statute does not address itself to the validity or invalidity, reliability or unreliability, of the prior felony conviction, but solely to the mere fact of that conviction. It is one's status, valid or not, as a convicted felon that renders

suggest that neither G. L. c. 233, § 21, Second, nor any appellate case presently imposes a requirement upon the Commonwealth to show that a reviving conviction was counseled. The statute itself, of course, imposes no requirement upon the Commonwealth to show that *any* conviction the Commonwealth wishes to use for impeachment purposes was counseled; the requirement is constitutional and is articulated in the case law earlier discussed. Whether the requirement extends to a reviving conviction is a matter of first impression that we answer in the affirmative based on the reasoning of that precedent.

The thrust of the Commonwealth's argument, however, really lies elsewhere. We are urged to remove from the Commonwealth its long-standing burden, whenever it seeks to impeach a defendant with a prior felony conviction, to show that the defendant was represented by counsel or executed a valid waiver of counsel. The Commonwealth points to the rules of criminal procedure requiring the appointment of counsel and the regular practice of our trial courts in complying with such rules, and argues for a presumption of regularity on the issue. The Commonwealth suggests, in other words, that we shift to the defendant the burden of showing that a felony conviction is unreliable because he was deprived of counsel. This is something that we, as an intermediate appellate court, may not do. The law of this Commonwealth on the point has been settled at least since the Supreme Judicial Court decided *Commonwealth* v. *Cook*, 371 Mass. at 833, and imposed this burden squarely on the Commonwealth. We are not at liberty to depart from the charted course.

It was error, then, to allow the use of the stale conviction to impeach the defendant's credibility. If the error, preserved as it was by objection, is of constitutional dimension, as the defendant urges, it must result in reversal unless the Commonwealth proves beyond a reasonable doubt that it was harmless. See *Commonwealth* v. *Barrett*, 1 Mass. App. Ct. 332, 336 (1973). If, as the Commonwealth urges, such an error is not

subsequent firearm possession a crime. One may of course challenge that prior conviction as unlawful, but until that challenge proves successful, one may not possess a firearm. *Lewis, supra* at 67. The situation is otherwise with our statutory impeachment scheme. It is not the mere fact of a prior conviction that permits its use for impeachment purposes. Our statute mandates that all prior felony convictions used to impeach fall within certain time parameters. Due process also requires that only counseled and reliable, and thereby valid, prior convictions be used to impeach a defendant.

constitutional in nature, the Commonwealth must convince us
" 'with fair assurance' that the improperly admitted evidence
did not have a significant impact on the jury's decision." *Com-
monwealth* v. *Childs,* 23 Mass. App. Ct. 33, 36 (1986), *S.C.,*
400 Mass. 1006 (1987), quoting from *Commonwealth* v. *Ford,*
397 Mass. 298, 302 (1986). See *Commonwealth* v. *Jackson,* 45
Mass. App. Ct. 666, 672 (1998).

"The use of a conviction of crime, resulting in a jail sentence,
to impeach the credibility of a criminal defendant is clear error
of constitutional dimension unless the Commonwealth estab-
lishes that he had or waived counsel." *Commonwealth* v. *Cook,*
371 Mass. at 833. The situation here differs from *Cook* and its
progeny in one key respect: the conviction erroneously allowed
in evidence to impeach the defendant was a counseled
conviction. It was error to put that conviction before the jury
not because it was uncounseled, but because it was stale, failing
as it did to meet the time requirements of G. L. c. 233, § 21,
Second. It was stale, of course, because it had not been revived
by a valid conviction, but the error from which the appeal is
taken was in admitting it at all. While the error underlying the
admission of the stale conviction here lay in a constitutionally
incorrect assessment of the validity of the reviving conviction,
the failure to exclude stale convictions in other circumstances
could as easily rest on errors having no constitutional basis, as
in *Commonwealth* v. *Childs, supra,* and *Commonwealth* v.
*Jackson, supra.* See *Commonwealth* v. *Johnson,* 431 Mass. 535,
541 (2000). The error (admission of a stale conviction) would
be the same irrespective of the reason for it. The question is a
close one, but the characterization of the error and the choice
between standards is not one we need make in these circum-
stances since, even if the error was not of constitutional dimen-
sion, a new trial is warranted.

The Commonwealth's case was strong, but not so as to
overcome the prejudice of an erroneously admitted conviction.
Two eyewitnesses who had been in close proximity to the rob-
ber for some time identified the defendant within hours of the
crime and again at trial. They also identified the plaid shirt or
jacket taken from the defendant's apartment. That the defendant
had fled from the police also evidenced consciousness of guilt.
There are difficulties, however. The defense was misidentifica-
tion, the defendant was the only defense witness, his credibility
was central to that defense, and, apart from the prior conviction

erroneously admitted, his credibility was not otherwise maligned. The prosecutor began his cross-examination of the defendant with the prior conviction for kidnapping, a violent crime, as were the crimes of which he stood accused at trial. The use of prior convictions is a potent tool and not infrequently "presents the risk that the fact finder's attention may be diverted from the question of the defendant's guilt to the question of the defendant's bad character." *Commonwealth* v. *Fano*, 400 Mass. at 303. While the judge gave a limiting instruction as to the use the jury could make of the prior conviction, she did not do so contemporaneously with its admission, but waited until after the lunch break to instruct. In closing argument, the prosecutor commented on the defendant's lack of credibility and motive to lie, at one point contrasting the police officer's testimony with the defendant's and stating, "One of these guys is out there doing his job, the other one's been convicted of kidnapping."

A decisive issue at trial was the defendant's credibility. We are unable to say with fair assurance that the jury's determination to disbelieve the defendant was not substantially swayed by the improperly admitted conviction, and thus conclude that the error requires reversal of the defendant's convictions.

*Motion to suppress.* The defendant also claims error in the failure to suppress the baker's voice identification of him at the police station, and the evidence seized during a warrantless search of the defendant's apartment following his arrest. Because these issues are pertinent to any retrial, we address them briefly.

*Out-of-court voice identification.* The motion judge's findings are amply supported by the record and we accept them absent clear error. *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980). Some four hours after the robbery, when the baker came to the station for a showup identification at police request, he did not identify the defendant as the robber. However, upon leaving the room where he had seen the defendant, the baker heard the defendant speak to someone. The baker immediately said, "That's him. That's his voice," and returned to the room for another look. The baker then identified the defendant. The judge found both that the police had not arranged for or prompted the defendant to speak, and that there was no indication that the words spoken by the defendant at the station were the same words used by the perpetrator during the robbery. That the defendant spoke when he did was, in short, a fortuity.

The defendant challenges the one-on-one out-of-court voice identification as having been made under unnecessarily suggestive conditions. We look to the factors articulated in *Commonwealth* v. *Marini*, 375 Mass. 510, 516-517 (1978): (1) the witness who has a basis for making an identification by sight should not be asked to make a voice identification unless he requests to hear the voice; (2) one-on-one auditions should be avoided; the best approach is a lineup; (3) the witness should not view the suspect as he listens to the suspect's voice; (4) the words spoken by the suspect should not be the same as those heard by the witness at the scene of the crime; and (5) the voice identification should occur close to the time of the crime, the earlier the better. See *Commonwealth* v. *Gauthier*, 21 Mass. App. Ct. 585, 587-588 (1986); *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. 114, 117 (1999). It is not necessary that all five prongs of the test be met. There are circumstances "where one or more of those criteria may be overlooked, as in an immediate postcrime showup identification." *Ibid.*

Here, while the baker did not request to hear the voice, neither was he asked by the police to do so, and we think this weighs against suggestiveness under the first factor. As to the second, the situation was in a sense one-on-one, albeit spontaneous and unplanned, insofar as the baker could reasonably have thought the voice he heard was that of the person he had just viewed. The baker was not looking at the defendant when he heard the voice, however, satisfying the third factor; the words were not the same used at the scene, satisfying the fourth; and the identification took place within hours of the crime, generally satisfying the fifth. On balance, the *Marini* factors were met and we agree with the motion judge that the voice identification need not have been suppressed.

*Warrantless search of the defendant's apartment.* The defendant maintains that the motion judge should have suppressed the plaid shirt or jacket and the overcoat seized during a warrantless entry and search of the apartment in which the defendant was arrested. The defendant does not contend that the police lacked probable cause to arrest him. After hearing evidence, the motion judge made specific written findings of fact supported by the evidence, which we accept absent clear error. The judge denied the suppression motion because he concluded that exigent circumstances existed justifying the warrantless entry, a conclusion the defendant disputes on appeal.

Absent an arrest or search warrant, "[p]robable cause must be coupled with exigent circumstances to justify a police intrusion into the home." *Commonwealth* v. *Collazo*, 34 Mass. App. Ct. 79, 84 (1993), citing *Commonwealth* v. *Forde*, 367 Mass. 798, 800 (1975). The burden is on the Commonwealth to show that "it was impracticable for the police to obtain a warrant, and the standards as to exigency are strict." *Commonwealth* v. *Forde*, 367 Mass. at 800. The circumstances must be evaluated in their totality and as they appeared to the police at the time of the warrantless entry, not in hindsight. *Id.* at 801. *Commonwealth* v. *Collazo*, 34 Mass. App. Ct. at 84. The following factors must be considered: "(1) the crime in question was one of violence and the suspect had been reported to be armed and dangerous; (2) probable cause to believe that the suspect has committed a felony and strong reason to believe the suspect is in the particular dwelling; (3) the entry has been made peaceably (preferably in the daytime); (4) a likelihood that the delay attendant upon securing a warrant would facilitate the destruction of evidence or property; (5) a likelihood that the suspect would escape if not promptly apprehended; and (6) some showing of a reasonable basis for believing that delay would subject the officers or others to physical harm." *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. 694, 700 (1979), citing *Commonwealth* v. *Forde*, 367 Mass. at 807.

The motion judge in this case found:

> "The crime in question was one of violence. The victim [baker] . . . said that the suspect claimed to have a gun. The likely delay in securing the warrant would have meant that entry would have taken place at an hour in the day where many people, including children, would have been up and about. If the suspect resisted, there was a substantial risk of harm to innocent bystanders. Furthermore, the police entry was peaceable; they secured the maintenance man to open the door with a key."

There was evidence that the time of entry was around sunrise at 6:30 A.M., and that young children in the densely populated housing complex would soon be leaving for school. There was also evidence that the defendant had earlier fled from police into his apartment and that, having reason to know the police were after him, he also had reason to conceal or destroy evidence of the crime, such as the baker's license or his own

clothing. On the other hand, there was evidence that the police had the apartment surrounded and that a successful escape would have been unlikely in the two-hour period estimated as necessary for the police to have obtained a warrant.

Although the question is reasonably close, most if not all of the *DiSanto/Forde* factors were satisfied, see *Commonwealth* v. *DiSanto*, 8 Mass. App. Ct. at 701, and, viewing the circumstances in their totality and as they appeared to the police at the time, *Commonwealth* v. *Young*, 382 Mass. 448, 456 (1981), we think the Commonwealth satisfied its burden of showing the existence of exigent circumstances, and discern no error in the judge's denial of the motion to suppress the clothing.

*Judgments reversed.*

*Verdicts set aside.*